NICHOLAS A. FOSTER *vs*. THE LOFT, INC., & another.[1]

No. 87-513.

Middlesex.  January 20, 1988. — August 12, 1988.

Present: BROWN, KAPLAN, & SMITH, JJ.

Further appellate review granted, 403 Mass. 1102 (1988).

*Negligence,* Employer, Retention of employee. *Proximate Cause. Practice, Civil,* Judgment notwithstanding verdict.

In an action against a bar owner and two of its employees, including a bartender, arising from an assault and battery inflicted on a customer by the employees, which resulted in the jury's finding in answer to special questions, that the bar had failed to use reasonable care in deciding to retain the bartender as an employee and that such negligence was the proximate cause of the customer's injuries, there was no error in the judge's denial of the owner's motion for judgment notwithstanding the verdict, where the jury's finding was warranted by evidence that, prior to the incident, the owner's management knew that the bartender had been convicted of violent crimes; that the establishment was not a quiet cocktail lounge but rather a complex of five bars that served alcoholic beverages to a large, young crowd; and that the bartender's duties, including the handling of customer complaints, presented situations that might deteriorate into heated confrontations. [290-292, 294-295]

CIVIL ACTION commenced in the Superior Court Department on November 1, 1984.

The case was tried before *James P. Lynch, Jr.,* J.

*John D. Boyle* for The Loft, Inc.

*Elliott J. Mahler* for the plaintiff.

SMITH, J.  The plaintiff brought an action in the Superior Court against The Loft, Inc. (Loft), and two of its former employees, Gino Rida and David Miller. The complaint set forth several counts which included counts against the employees for assault and battery and counts against Loft for negligent

---

[1] Gino Rida. David Miller was also named as a defendant. The jury in effect found in his favor, and the plaintiff did not appeal.

hiring and retention of its employees Rida and Miller. In its answers to special questions, the jury found that Loft failed to use reasonable care in deciding to retain Rida as an employee and that such negligence was the proximate cause of the plaintiff's injuries.[2]

Loft moved at the close of the plaintiff's evidence and again at the close of all the evidence for a directed verdict on the negligent retention count. Its motions were denied. After the verdict was returned against it on that count, Loft moved for judgment notwithstanding the verdict. Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974). Its motion was denied, and that action by the judge is the sole issue raised on appeal by Loft.

The plaintiff's theories of liability — negligent hiring or negligent retention of an employee by an employer — have been recognized by a number of jurisdictions, including Massachusetts. *Carson* v. *Canning*, 180 Mass. 461 (1902).[3] Also see *Hathcock* v. *Mitchell*, 277 Ala. 586 (1965); *Colwell* v. *Oatman*, 32 Colo. App. 171 (1973); *Mallory* v. *O'Neil*, 69 So.2d 313 (Fla. 1954); *C.K. Sec. Sys.* v. *Hartford Acc. & Indem. Co.*, 137 Ga. App. 159 (1976); *Murray* v. *Modoc State Bank*, 181 Kan. 642 (1957); *DiCosala* v. *Kay*, 91 N.J. 159 (1982). See generally 53 Am. Jur. 2d Master & Servant § 422 (1970).

The doctrine states that an employer whose employees are brought in contact with members of the public in the course of the employer's business has a duty to exercise reasonable care in the selection and retention of his employees. These principles have been explained in the following manner: "An employer must use due care to avoid the selection or retention of an employee whom he knows or should know is a person un-

---

[2] The jury also found against Rida. It returned a verdict in favor of Loft on a count that alleged vicarious liability for an assault and battery committed by its employees.

[3] In *Carson* v. *Canning, supra,* the plaintiff brought an action against the defendant, a pawnbroker, for negligence. He claimed that he had pledged his property to the defendant and that the defendant's manager had absconded with it. The plaintiff was allowed to recover on the ground that the manager was an unfit person for his trust and that the defendant could and would have found that out if he had used ordinary care.

worthy, by habits, temperament, or nature, to deal with the persons invited to the premises by the employer. The employer's knowledge of past acts of impropriety, violence, or disorder on the part of the employee is generally considered sufficient to forewarn the employer who selects or retains such employee in his service that he may eventually commit an assault, although not every infirmity of character, such, for example, as dishonesty or querulousness, will lead to such result." Annotation, Liability of Employer, Other Than Carrier, For a Personal Assault Upon Customer, Patron, or Other Invitee, 34 A.L.R.2d 372, 390 (1954), quoted in *Hersh* v. *Kentfield Builders, Inc.*, 385 Mich. 410, 412-413 (1971).

It is the negligent retention aspect of the doctrine that formed the basis of the jury's verdict against the defendant. "Negligent retention . . . occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge or reassignment." *Garcia* v. *Duffy*, 492 So.2d 435, 438-439 (Fla. Dist. Ct. App. 1986). Also see *Carson* v. *Canning*, 180 Mass. at 462.[4]

In this case, the plaintiff contended that Loft was negligent because the evidence demonstrated that Loft knew that Rida had a criminal record and did nothing to determine its nature or extent, or to assure itself that Rida's past criminal activities were not such, in the circumstances, as to present a danger to customers. According to the plaintiff, those circumstances in-

---

[4] Most of the jurisdictions that have recognized the existence of this cause of action have held that liability exists on the part of the employer entirely independent of the employer's liability under the principles of respondeat superior. *Porter* v. *Thompson,* 357 Mo. 31 (1947). *DiCosala* v. *Kay,* 91 N.J. at 172. *Eifert* v. *Bush,* 51 Misc.2d 248 (N.Y. Sup. Ct. 1966). *Dempsey* v. *Walso Bureau, Inc.,* 431 Pa. 562 (1968). Also see Restatement (Second) of Torts § 317 (1963); Annotation, Employer's Knowledge of Employee's Past Criminal Record as Affecting Liability For Employee's Tortious Conduct, 48 A.L.R. 3d 359, 360 (1973). Thus, whether the employee's wrongful conduct was within the scope of his or her employment is generally not an issue in a negligent hiring or negligent retention action. In any event, that issue has not been raised here. Cf. *Davis* v. *Del Rosso,* 371 Mass. 768, 771-772 (1977).

cluded Rida's duties as a bartender and his work environment. Loft agrees that it owes a duty of care to its customers but argues that the only evidence presented by the plaintiff on the issue of negligence was that it knew, prior to the incident, that Rida had a criminal record. It contends that, even if it had known the nature of Rida's criminal record, that knowledge, by itself, cannot support a finding of negligence. Loft claims, therefore, that the judge erred when he denied its motion for judgment notwithstanding the verdict.

The standard governing a motion for judgment notwithstanding the verdict is the same as that applicable to a motion for directed verdict. *D'Annolfo* v. *Stoneham Housing Authy.*, 375 Mass. 650, 657 (1978). The standard is "whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.' *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978)." *Miles* v. *Edward O. Tabor, M.D., Inc.*, 387 Mass. 783, 786 (1982), quoting from *Abraham* v. *Woburn*, 383 Mass. 724, 727-728 (1981). "In applying this standard, we examine the evidence in the light most favorable to the plaintiff." *Forlano* v. *Hughes,* 393 Mass. 502, 504 (1984). We note that "[u]sually 'the question of negligence is one of fact for the jury. Only when no rational view of the evidence warrants a finding that the defendant was negligent may the issue be taken from the jury.'" *Mullins* v. *Pine Manor College*, 389 Mass. 47, 56 (1983), quoting from *Zezuski* v. *Jenny Mfg. Co.*, 363 Mass. 324, 327 (1973). Also see *Irwin* v. *Ware*, 392 Mass. 745, 764-765 (1984).

The evidence examined in the light most favorable to the plaintiff would have permitted the jury to find the following facts. The incident that resulted in the plaintiff's injuries occurred in Worcester on October 14, 1984, at a bar owned by Loft. At that time, the bar was actually a complex of five different bars, providing disco music for dancing on the premises. It had a seating capacity of five hundred people. Loft employed two uniformed police officers to control any disturbance. In addition, Loft hired four individuals whose functions were to check identifications and help maintain order. It was

also part of the two managers' duties to walk around the premises and to prevent or quell any disturbances. There had been disturbances at Loft prior to October 14, 1984.

Loft had assumed ownership of the business in September, 1984. It retained as its employees Rida and a number of other individuals, including Miller. Rida was employed as a bartender. In that role he met members of the public on a regular basis. His duties included taking orders for drinks from customers, making drinks, and handling customer complaints.

Sometime after Loft had acquired the business, and before October 14, 1984, its comanager, James Flynn, had a conversation with a Worcester police officer, one Alan Stuart, who was employed by Loft on a part-time basis. Flynn was concerned about a possible shortage in receipts from the bars and asked Stuart for suggestions on how to deal with the problem. Stuart told Flynn that Flynn should check his help and be careful about them, that Loft employed people who had problems in their past. He advised Flynn to check on Loft's bartenders, particularly those who had past problems. Flynn then told the police officer that he knew that Rida had a criminal record.[5] The jury could find that neither Flynn nor anyone else in Loft's management made any attempt to check on Rida's background or experience, made no inquiry of him as to job or character references, and did not ask him to fill out an employment application.

The incident that involved Rida and the plaintiff occurred in the following manner. In the late evening of Saturday, October 13, 1984, the plaintiff, accompanied by one Kohler and others, went to Loft. There they proceeded to the second floor, where there was dancing. Because there was standing room

---

[5] Rida's criminal record was placed in evidence. It consisted of a series of offenses that arose out of a single incident that occurred on July 19, 1981. The record showed that Rida had pleaded guilty on January 8, 1982, to charges of (1) assault and battery by means of a dangerous weapon, to wit, a knife, (2) assault with intent to commit rape, and (3) kidnapping. He received a one-year sentence on the first charge and was placed on probation for two years on the other charges, the probation to commence after he had served his prison term. He was on probation at the time of the incident that was the basis of the plaintiff's complaint.

only, the party moved to the third floor, where Rida was the bartender. It was after midnight. The plaintiff and his companion Kohler ordered drinks. Kohler complained to Rida that his drink was improperly mixed and asked him to make a new drink. Rida responded with obscene language and gestures. Kohler then threw his drink at Rida. Rida jumped over the bar and punched Kohler. The plaintiff, who had been standing next to Kohler, had his arm pinned behind his back by Miller, a doorman at Loft. As Miller held the plaintiff, Rida punched him in the face, fracturing the plaintiff's cheekbone and injuring his right eye.

The evidence disclosed that Loft, prior to the incident, knew that Rida had a criminal record. That fact, by itself, is not enough to establish, as matter of law, Loft's negligence. See *Evans* v. *Morsell*, 284 Md. 160, 167 n.4 (1978).[6] Rather, negligent retention in this case depends upon the nature of the record and all the circumstances.[7] The evidence disclosed that Loft was not a quiet cocktail lounge but rather a large complex of bars that served alcoholic beverages to a large, young crowd. Loft employed a considerable number of personnel, including police officers, to maintain order. The jury from that evidence could infer that the atmosphere in which Rida worked was volatile and that there was a high potential for violence. In that environment, Rida's duties, including the handling of customer complaints, presented situations that the jury could reasonably infer might deteriorate into heated confrontations. In these circumstances it was open to the jury to find that Loft

---

[6] For us to hold that an employer can never hire a person with a criminal record or retain such a person as its employee "at the risk of being held liable for his tortious assault flies in the face of the premise that society must make a reasonable effort to rehabilitate those who have gone astray." *Williams* .v. *Feather Sound, Inc.,* 386 So.2d 1238, 1241 (Fla. Dist. Ct. App. 1980).

[7] Obviously, the nature of the employee's criminal record is important. An employee's past conviction of larceny by check would not make the employer liable, on the basis of the doctrine of negligent hiring or negligent retention, for the employee's subsequent rape of a customer. *Evans* v. *Morsell*, 284 Md. at 167 n.4.

In the instant case, Rida's record consisted of violent acts, and his similar acts caused the plaintiff's injuries.

was negligent in retaining Rida in his position as bartender, and that its action in doing so was the proximate cause of the plaintiff's injuries. Assuming, as Loft asks us to do, that Loft had knowledge of the nature of Rida's criminal record, it was open to the jury to find that Loft "took a risk with respect to the plaintiff's safety that a person of ordinary prudence would not have taken, and that the plaintiff suffered a resulting injury that was within the foreseeable risk." *Irwin* v. *Ware*, 392 Mass. at 765, quoting from *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 330 (1982). It follows that the denial of Loft's motion for judgment notwithstanding the verdict was not error.

We emphasize again that our decision does not mean that an employer cannot hire or retain a person known to have a criminal record.[8] Circumstances will differ from case to case, and what might be a perfectly acceptable hiring or retention under one set of circumstances might be highly unreasonable under another.

*Judgment affirmed.*

---

[8] We agree with the majority of jurisdictions that hold that there is no requirement, as matter of law, that the employer make an inquiry with law enforcement agencies about an employee's *possible* criminal record, even where an employee is to deal regularly with the public. *Garcia* v. *Duffy*, 492 So.2d at 441. *Evans* v. *Morsell*, 284 Md. at 167. That was not the situation here, however, as the evidence showed that Loft knew that Rida had a criminal record.