Lorraine M. VICARELLI, Plaintiff,

v.

BUSINESS INTERNATIONAL, INC.,
d/b/a Economist Intelligence
Unit, Defendant.

Civil Action No. 95–12401–RCL.

United States District Court,
D. Massachusetts.

Aug. 22, 1997.

Patricia M. Flannery, Thornton, Early & Naumes, Boston, MA, for Plaintiff.

Gerald Borovick, Bordsky, Altman & McMahon, Woburn, MA, James C. McMahon, Jr., Bordsky, Altman & McMahon, New York City, for Defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

LINDSAY, District Judge.

This diversity action arises out of the alleged sexual harassment of the plaintiff Lorraine M. Vicarelli ("Vicarelli"). Vicarelli, a citizen of Massachusetts, worked as an independent contractor for the defendant Business International, Inc., d/b/a Economist Intelligence Unit, a New York corporation ("EIU"). She alleges that Whitworth "Skippy" Ferguson, III ("Ferguson"), the person assigned by EIU to supervise her work, sexually harassed her "by telephoning and sending sexually charged e-mails and letters to her home in Massachusetts," by making a *quid pro quo* offer of a sexual relationship, and by retaliating against her when she refused to accede to Ferguson's advances.

Vicarelli asserts nine claims, all arising under Massachusetts law: count 1, alleging retaliation, said in this case to be made unlawful by Mass. Gen. L. c. 214, § 1C ("Chapter 214 § 1C"); count 2, alleging sexual harassment, said in this case to be proscribed by Chapter 214, § 1C; count 3, alleging intentional infliction of emotional distress; count 4, alleging negligent infliction of emotional distress; count 5, alleging negligent hiring; count 6, alleging negligent retention; count 7, alleging negligent supervision; count 8, alleging a violation of the Massachusetts Civil Rights Act, Mass. Gen. L. c. 12, § 11H–11I ("MCRA"); and count 9, alleging breach of contract.

### I.  Background

The complaint alleges the following.[1]

In August of 1994, Vicarelli, a free-lance writer, entered into an agreement with EIU by which Vicarelli was to undertake certain research and writing for an EIU project.[2] The project was estimated to last about six months and required travel throughout the United States and Europe.  The parties agreed that Vicarelli would work from her home in Massachusetts under the supervision of Ferguson, and that all travel and other expenses would be reimbursed by EIU.

From August 1994 to March of 1995, Ferguson engaged in sexually harassing behavior that included "lewd and sexually offensive remarks and behavior" towards Vicarelli. For example, an e-mail message sent by Ferguson to Vicarelli was signed "lasciviously yours," and another said, "[w]hatever you do with bud, remember you only have one hour for lunch, so be ready for work when time is up ... also, there will be no animals ... Oh, the very thought gets me rather flushed ..." Ferguson also made "vulgar and derogatory comments about other women", referring to one woman's breasts as "nice melons."

Vicarelli alleges that the sexual harassment increased over time, with Ferguson alluding to a potential romantic encounter with Vicarelli.  Ferguson repeatedly invited Vicarelli to spend weekends with him in New York and invited himself to her Connecticut home.  These advances coincided with Ferguson's intimations that EIU was not obligated to reimburse Vicarelli for certain of her travel expenses, but that, as a favor to Vicarelli, Ferguson had nevertheless approved them for payment.

On March 17, 1995, during a business trip to London, Ferguson made hotel arrangements by which he and Vicarelli would share a single room.  Vicarelli refused those arrangements.  On the second night of the London trip, Ferguson told Vicarelli that he wanted a relationship that was more than business or friendship, and asked Vicarelli if she wanted company for the night.  Vicarelli again refused.

---

1.  The allegations of the complaint have been summarized (and in some cases synthesized) in this section.

2.  Although Vicarelli began her work in August, 1994, the parties did not execute a written contract until December 30, 1994.

Immediately following the incidents in London, Vicarelli was required to substantiate expense reports that Ferguson previously had said that he had approved. Ferguson also became critical of Vicarelli's work. Theretofore he had only expressed himself as pleased with her work. The work relationship between Vicarelli and Ferguson deteriorated to the point where Ferguson issued an ultimatum that if Vicarelli failed to produce certain work within five days of April 14, 1995, he would consider her in breach of the contract between her and EIU.

On May 2, 1995, Vicarelli filed a sexual harassment claim with the MCAD. Several days later, EIU notified her that it considered her in breach of the parties' contract. Thereupon, Vicarelli dismissed her MCAD charge, pursuant to Mass. Gen. L. c. 151B § 9,[3] and filed the present action.

## II. The Present Motion.

Pending before the court is the motion of the Defendant EIU to dismiss the complaint for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6).[4] EIU argues (1) that Chapter 214 § 1C provides no protection against sexual harassment to individuals who, like Vicarelli, are not employees, but are independent contractors; (2) that even if that statute did offer protection to Vicarelli, the statute does not create a claim for retaliation; (3) that the emotional distress claim must be dismissed because the contract between the parties does not provide for emotional or mental distress damages; (4) that the negligent supervision, hiring, and retention claims apply only to situations where employees are hired to interact with the public, and here, Ferguson was not hired for such a purpose;

and (5) that the MCRA claim must be dismissed, because there is no respondeat superior liability under that statute.

For the reasons set forth below, the defendant's motion is GRANTED in part and DENIED in part.

## III. Standard for Motion to Dismiss

On a motion to dismiss, made pursuant to Rule 12(b)(6), the court is required to take the factual averments contained in the complaint as true and to draw all reasonable inferences in favor of the plaintiff. *Kiely v. Raytheon Co.,* 105 F.3d 734, 735 (1st Cir. 1997). "Dismissal is proper only if it is clear that no relief could be granted, under any theory, under any set of facts that could be proved consistent with the allegations." *Id.* (internal quotation omitted). The court's inquiry on this motion is limited to "whether the claimant is entitled to offer evidence to support [her] claims," not whether she will ultimately prevail. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

## IV. Discussion

### A. The Chapter 214 § 1C Claims (Counts I and II)

#### 1. Applicability to Independent Contractors.

■ The principal issue presented by the present motion is whether Chapter 214 § 1C provides a cause of action to an independent contractor who claims to have suffered sexual harassment in the course of fulfilling obligations under the contract.[5] There is little caselaw interpreting the scope of Chapter 214 § 1C, and the issue raised by the present

---

3. This statute allows a charging party to dismiss the charge of discrimination (including sexual harassment) filed with the MCAD within ninety days after filing (or sooner if a commissioner of the MCAD consents in writing) and commence a civil action.

4. EIU also moved to dismiss or to transfer pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(3), and 28 U.S.C.A. § 1404(a) or § 1406(a). The court issued a separate order denying these motions dated March 21, 1997.

5. There is no allegation that Vicarelli worked as an employee in the complaint; nor does Vicarelli allege facts that would make her an employee

under Massachusetts common law. *See McDermott's Case,* 283 Mass. 74, 76, 186 N.E. 231 (1933) (test for employee status is the right of the employer to control "at every moment, with respect to every detail" the work to be performed); *accord Speen v. Crown Clothing Corp.,* 102 F.3d 625, 629–30 (1st Cir.) *cert. denied,* —— U.S. ——, 117 S.Ct. 2457, 138 L.Ed.2d 214 (1997) (applying Massachusetts law). On the contrary, in her memorandum in opposition to the present motion, Vicarelli explicitly acknowledges that she worked as an independent contractor, and not as an employee. Plaintiff's Opp. Mem. at 1. Thus, the fact that Vicarelli was an independent contractor is not a disputed matter in this case.

motion has not been settled by the Massachusetts Supreme Judicial Court (the "SJC"). The court must therefore predict how the SJC would decide the question.

In 1986, the Massachusetts legislature enacted St. 1986, c. 588, entitled "An Act Prohibiting Sexual Harassment" ("Chapter 588"). *See Green v. Wyman-Gordon Co.,* 422 Mass. 551, 553, 664 N.E.2d 808 (1996) (discussing the legislative history of Chapter 214 § 1C). Chapter 588 amended Mass. Gen. L. c. 151B ("Chapter 151B"), the Massachusetts law prohibiting discrimination in employment, among other things, by adding a subsection 16A to the existing § 4. The new subsection made it an unlawful practice for an employer "to sexually harass any employee." *Id.* Chapter 588 also enacted Chapter 214 § 1C, which provides, in its entirety:

> A person shall have the right to be free from sexual harassment, as defined in chapter one hundred and fifty-one B and one hundred and fifty-one C. The superior court shall have the jurisdiction in equity to enforce this right and to award damages.

As defined in Chapter 151B, "sexual harassment" consists of:

> [S]exual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when (a) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions; (b) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment. Discrimination on the basis of sex shall include, but not be limited to, sexual harassment.

Mass. Gen. L. c. 151B § 1(18) ("Chapter 151B § 1(18)").

The question whether the Massachusetts Legislature, in amending Chapter 151B to make sexual harassment an act of sex discrimination and simultaneously enacting Chapter 214 § 1C to create a right of action for sexual harassment, intended to provide duplicative remedies for the same wrongful conduct has been answered in the negative by the SJC. *Green,* 422 Mass. at 557–58, 664 N.E.2d 808 (rejecting plaintiff's argument that Chapter 214 § 1C would be rendered a "near nullity" if it were not construed to provide a duplicative remedy); *Guzman v. Lowinger,* 422 Mass. 570, 572, 664 N.E.2d 820 (1996). Chapter 151B, the SJC has instructed, is the exclusive remedy for discrimination in the context of a traditional employer-employee relationship, *see Charland v. Muzi Motors, Inc.,* 417 Mass. 580, 631 N.E.2d 555 (1994), and it applies to employers with six or more employees. *Guzman,* 422 Mass. at 572, 664 N.E.2d 820. It does not apply to independent contractors. *Comey v. Hill,* 387 Mass. 11, 15, 438 N.E.2d 811 (1982) (the definition of "employee" in Mass. Gen. L. c. 151B does not include independent contractors).

Chapter 214 § 1C, on the other hand, is broader. As the SJC has explained in *Green,* "G.L. c. 214 § 1C ensures that *all* employees are protected against sexual harassment in the workplace, whether or not their employers fit within the definition in c. 151B." *Green,* 422 Mass. at 557, 664 N.E.2d 808 (emphasis in original). As noted earlier, however, the SJC has not addressed whether the statutory right to be free from sexual harassment, set forth in Chapter 214 § 1C, creates a remedy for independent contractors who suffer sexual harassment by the other party to the contract.

In its opening clause, Chapter 214 § 1C appears to speak in universal and unambiguous terms: "A person shall have the right to be free from sexual harassment. . . ." What follows, however, is a definition of sexual harassment that delimits the universality of the words "[a] person" as used in the statute. That definition incorporates the meaning of sexual harassment as it appears in Chapter 151B § 1(18) and in Mass. Gen. L. c. 151C § 1(e) ("Chapter 151C § 1(e)").

The definition of sexual harassment in Chapter 151C § 1(e) is virtually identical to the definition that appears in Chapter 151B § 1(18). What triggers the sexual harassment in Chapter 151C § 1(e) is that the submission or rejection of the sexual ad-

vances or other conduct of a sexual nature "is made either explicitly or implicitly a term or condition of the provision of the benefits, privileges or placement services or as a basis for the evaluation of academic achievement; or ... such advances, requests or other conduct have the purpose or effect of unreasonably interfering with an individual's education by creating an intimidating, hostile, humiliating or sexual offensive educational environment."

The Legislature's incorporation into Chapter 214 § 1C of virtually identical definitions of sexual harassment from Chapter 151B § 1(18) and Chapter 151C § 1(e) strongly suggests an intention to restrict the meaning of the term "person" in Chapter 214 § 1C to a "person" either in the employment context or a person in the educational context. *See Clarke v. Kentucky Fried Chicken,* 57 F.3d 21, 26 (1st Cir.1995). The Legislature could have provided a broader definition for sexual harassment in Chapter 214 § 1C, or it could have enacted provisions that would have explicitly protected independent contractors from sexual harassment. No definition of sexual harassment, apart from those taken from Chapter 151B § 1(18) and Chapter 151C § 1(e), appears in Chapter 214 § 1C, however.

Focusing on the reference in Chapter 214 § 1C to the sexual harassment definition appearing in Chapter 151B § 1(18), Vicarelli argues that, because the two statutes were enacted at the same time,[6] reading them as both dealing with sexual harassment in the employment context would render Chapter 214 § 1C redundant. The Supreme Judicial Court, however, has already addressed this question. Deciding that Chapter 214 § 1C and Chapter 151B § 4(16A) do not provide duplicative remedies for sexual harassment in the employment context, the court has held that Chapter 214 § 1C ensured that all employees in Massachusetts, regardless of the size of their employers, would have a right to be free from sexual harassment and a remedy to enforce that right. *Green,* 422 Mass. at 557, 664 N.E.2d 808; *see also Clarke,* 57 F.3d at 26 ("[T]he Legislature

may well have intended that Section 1C make *all employment*-based sexual harassment unlawful in Massachusetts, without regard to the number of employees working for the particular employer, whereas *other forms of employment-based discrimination* would be covered by [Mass. Gen. L. c. 151B] only if practiced by employers who hire more than five persons.")

One could argue that when the Legislature, in enacting Chapter 151B § 1(18) included within the definition of sexual harassment phrases like "the terms and conditions of employment", "employment decisions" "work performance" and "work environment," the Legislature did not necessarily intend that that definition evoke the traditional employer-employee relationship when used in connection with claims made under Chapter 214 § 1C. *See Clarke,* 57 F.3d at 26 (discussing arguments made by the plaintiff in that case).

The difficulty with this argument is that the definition of sexual harassment in Chapter 151B § 1(18) gives content to the prohibition in Chapter 151B § 4(16A) of sexual harassment by an employer of an employee; and the SJC in *Comey,* 438 N.E.2d at 815, decided some four years before Chapter 214 § 1C was enacted, held that the definition of employee in Chapter 151B was not so broad as to encompass an independent contractor. In enacting Chapter 214 § 1C, the Legislature is presumed to have had knowledge of the *Comey* decision. *MacQuarrie v. Balch,* 362 Mass. 151, 152, 285 N.E.2d 103 (1972). One would have expected, therefore, that if the Legislature had intended to prohibit sexual harassment in those working relationships, other than the traditional employer-employee relationship, the Legislature would have eschewed the limiting definition of sexual harassment that appears in Chapter 151B § 1(18) or that it would have made explicit that Chapter 214 § 1C applies to those working relationships, like the independent contractor situation, that are outside the traditional employer-employee framework.

For the reasons discussed in this section of the memorandum and order, the court is

---

6. Chapter 151C § 1(e) was also enacted at the same time as Chapter 151B § 1(18) and Chapter

214 § 1C. St. 1986 c. 588 § 4.

persuaded that, faced with the question, the SJC would hold that Chapter 214 § 1C does not create a sexual harassment cause of action for independent contractors. Accordingly the motion to dismiss the sexual harassment claim (count II of the complaint) is GRANTED. Similarly, the motion to dismiss the retaliation claim (count I) is also GRANTED.

### B. *The Intentional and Negligent Infliction of Emotional Distress Claims (Counts III and IV).*

■ EIU contends that the claims for intentional and negligent infliction of emotional distress asserted in counts III and IV respectively should be dismissed because the agreement between EIU and Vicarelli does not provide for emotional or mental distress damages. The short and dispositive response to this contention is that Vicarelli does not seek damages for emotional distress under the agreement between the parties. Instead, her claims for infliction of emotional distress are made as tort claims. EIU points to no language in the agreement that would prohibit these claims or limit recovery for them to the damages recoverable for breach of the contract.[7]

Accordingly, the motion to dismiss counts III and IV is DENIED.

### C. *The Negligent Hiring, Retention, and Supervision Claims* (Counts V, VI, VII)

■ EIU contends that claims for negligent hiring, retention and supervision lie only where the alleged wrongdoer was hired to interact with the public. Since Ferguson was not hired to interact with the public, EIU argues, Vicarelli has not stated a claim under these theories.

■ The torts of negligent hiring, retention, and supervision ordinarily relate to situations where "employees are brought into contact with members of the public in the course of an employer's business." *Foster v.*

*The Loft Inc.,* 26 Mass.App.Ct. 289, 290, 526 N.E.2d 1309 (1988). Thus, the duty of an employer to avoid negligence in the hiring, supervision and retention of employees ordinarily runs to members of the public, and not to employees. *Id.* at 290–91, 526 N.E.2d 1309; *Choroszy v. Wentworth Institute of Technology,* 915 F.Supp. 446, 450 (D.Mass. 1996).

■ In addition, to state a claim for these torts requires that a plaintiff allege that the employer knew, or should have known, that the offending employee had a proclivity to commit the complained-of acts, and that the employer nevertheless failed to take corrective action. *Foster,* 26 Mass.App.Ct. at 291, 526 N.E.2d 1309. As the court in *Foster* explained,

> An employer must use due care to avoid the selection or retention of an employee whom he knows or should know is a person unworthy, by habits, temperament, or nature, to deal with the persons invited to the premises by the employer. The employer's knowledge of past acts of impropriety, violence, or disorder on the part of the employee is generally considered sufficient to forewarn the employer who selects or retains such employee in his service that he may eventually commit an assault, although not every infirmity of character, such, for example, as dishonesty or querulousness, will lead to such result.

*Id.* (quotation omitted).

Assuming, without deciding, that, as an independent contractor, Vicarelli is a member of the public to whom EIU owes a duty of care in the selection, retention and supervision of its employee Ferguson, counts V, VI and VII are nevertheless deficient because Vicarelli has not alleged that EIU knew or should have known of any propensity on the part of Ferguson for sexual harassment or that EIU knew or should have known of Ferguson's alleged misconduct toward Vicarelli. In the absence of these allegations, the

---

7. EIU also argued that these claims should be dismissed, because Vicarelli has not alleged that the emotional distress she allegedly suffered was "severe." This argument similarly fails. Indeed, it is difficult to accept that the argument is seriously advanced. Vicarelli alleges that, as a result of the defendant's conduct, she suffered "great mental anguish, emotional distress, physical injuries and loss of enjoyment of life." Complaint at ¶¶ 39, 41. Assuming, without deciding, that Vicarelli must allege that her emotional distress was "severe" the court determines that, for purposes of the present motion, Vicarelli's use of the word "great," in connection with her alleged emotional distress, sufficiently conveys the notion of "severe".

plaintiff has not stated claims for negligent hiring, retention and supervision of Ferguson. Accordingly, the court DISMISSES counts V, VI and VII.

The court, however, will entertain a motion to amend the complaint for the purpose of curing the deficiencies discussed in this section of the memorandum and order. Any such motion shall be filed not later than ten days from the date of this memorandum and order and shall be accompanied, of course, by the proposed amendment and a memorandum setting forth authority for the proposition that, as an independent contractor of EIU, Vicarelli is the kind of "member of the public" who is entitled to bring an action for negligent hiring, supervision and retention against EIU.[8]

### D. *The Claim Under MCRA (Count VIII)*

█ In count VIII, Vicarelli alleges that "[t]he defendant, individually, jointly and severally through the actions of its agents and employees acting within the scope of their employment, interfered by threats, intimidation or coercion with [her] constitutional, common law and statutory rights in violation of the [MCRA]." Complaint at ¶ 56. This paragraph is hardly a model of clarity; but it does appear that Vicarelli is alleging, at least in part, that EIU is vicariously liable for the acts of its agents and employees. The paragraph could be read, however, to allege both vicarious liability on the part of EIU and EIU's separate and independent liability for its own acts in violation of MCRA. The effort to understand paragraph 56 is not necessary, however, because Vicarelli's memorandum in opposition to the motion to dismiss addresses the count VIII claim only as a respondeat superior claim. Plaintiff's Opp. Mem. at 13–14. The court thus considers the matter settled: count VIII alleges only vicarious liability on the part of EIU for the actions of Ferguson.

The SJC has not addressed the issue of whether a defendant may be vicariously lia-

ble under the MCRA. *Lyons v. National Car Rental Systems, Inc.*, 30 F.3d 240, 245 (1st Cir.1994). In *Lyons*, however, the First Circuit, after a thorough analysis of Massachusetts law, held that "claims against employers under the MCRA cannot rest on the doctrine of respondeat superior." *Id.* at 247. The MCRA claim is thus dispatched. Accordingly, the motion to dismiss Count VIII is GRANTED.

### V. Summary

For the reasons stated above, the court GRANTS the motion to dismiss counts I, II, V, VI, VII and VIII, except that leave is given to Vicarelli to amend the complaint as to counts V, VI, and VII in accordance with the conditions stated at p. 247 of this memorandum and order. The motion to dismiss counts III and IV is DENIED, and those counts, together with count IX, remain for adjudication.

So ordered.

---

8. The court does not here simply give leave to Vicarelli to file an amended complaint for two reasons. First, it is not clear that Vicarelli can allege, in good faith, the kind of actual or constructive knowledge on the part of EIU necessary to state a claim for negligent hiring, supervision and retention. Furthermore, the question of

whether Vicarelli, in this case, is the kind of "member of the public," to whom EIU owed a duty regarding the hiring, supervision and retention of Ferguson is one which requires more developed argument from the parties before an amendment to the complaint is allowed.